October 10, 2023

<u>Via ECF</u>
Hon. Arlene R. Lindsay
United States Magistrate Judge
United States District Court
Eastern District of New York
814 Federal Plaza
Central Islip, NY 11722

      Re:    *Jose Hernandez v. New York Fast Concrete Group Inc., et al.*
             <u>Docket No.: 21-CV-06854 (WFK) (ARL)</u>

Dear Judge Lindsay:

      This firm represents the Plaintiff in the above-referenced action against his former employers alleging that Defendants violated the Fair Labor Standards Act and New York Labor Law by failing to pay him overtime wages when he worked more than forty (40) hours per week. Plaintiff also asserts claims against Defendants for statutory violations of the New York Labor Law. After the Defendants filed their Answer, and the parties engaged in some initial discovery, the parties were referred to mediation in this matter. While the mediation ultimately failed, the parties continued negotiations and ultimately reached a settlement in principle. We now seek approval of the parties' settlement of Plaintiff's FLSA claims pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015).

      The parties have memorialized their resolution in a Settlement Agreement and Release ("FLSA Agreement"), attached hereto as Exhibit A. The release set forth in the Agreement is limited to claims arising under the FLSA and NYLL. Further, the Agreement does not contain any confidentiality or non-disclosure provisions. While the Agreement does include a mutual non-disparagement provision, the mutual non-disparagement provision provides Plaintiff and Defendants with the ability to provide truthful statements about their experience litigating this action, about Plaintiffs' FLSA claims in this action, and about the resolution of this action. Thus, the parties' agreed upon mutual non-disparagement provision contains the required carve out provision permitting parties to make truthful statements about this lawsuit and their experiences litigating this matter. <u>Ramos Pelico v. PGNV, LLC</u>, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (approving non-disparagement clause where "the non-disparagement clause is mutual and includes an explicit carve-out for truthful statements. The Agreement provides that the mutual non-disparagement clause 'shall not apply to truthful statements made by any of the Parties regarding their experiences in the Litigation and/or the underlying facts of any claim or defense.'").

      The FLSA Agreement is reasonable and in the best interest of Plaintiff. The parties agreed to fully and finally resolve all of the Plaintiff's claims by having Defendants pay Plaintiff a total of $42,000.00. Plaintiff believes the agreement is fair and reasonable under

the circumstances. Defendants vigorously disputed liability and steadfastly maintained that Plaintiff was paid for all hours worked and provided certain documents that appeared to partially contradict some of Plaintiff's claims. The parties held vastly different views regarding the number of hours worked and the pay received by Plaintiff each week. Due to the fact-intensive nature of these inquiries, a resolution of this dispute would require extensive discovery and dispositive motion practice. If Defendants' recollection and documents were found to be more credible than Plaintiff's, Plaintiff could potentially recover nothing at all. Accordingly, resolving the action on behalf of Plaintiff at this early juncture provides certainty in that he will receive compensation for his alleged unpaid wages, given the particular economic impact the COVID-19 pandemic has had on smaller businesses and how long it would take to receive a post-trial decision.

In light of the significant litigation risks outlined above, all parties believe that this settlement is fair and reasonable. Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that he could receive much lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Moreover, Plaintiff will be able to recover settlement funds more expeditiously, and with more certainty, than with a trial judgment, since the parties would need to take depositions and likely brief numerous motions on the merits before trial could commence, further increasing the costs to both sides.

As set forth in the attached Agreement, the parties have agreed to settle this action, pursuant to an appropriately limited release, for a total settlement amount of $42,000.00 (the "Settlement Amount"). This amount includes $13,710.33 for attorneys' fees and $869.00 in costs for filing fees, costs of service, and mediation fees. The attorney's fee represents one-third (33.3%) of the total settlement amount after deducting for costs and expenses and is reasonable. Plaintiff's counsel researched and investigated Plaintiff's claims, conducted an in-depth and detailed inquiry regarding his job duties, hours worked and compensation, commenced this action, responded to pre-mediation discovery, drafted and filed a motion for conditional certification of the alleged collective, prepared a detailed assessment of damages, participated in settlement negotiations, prepared a pre-mediation brief for the chosen mediator, participated in a mediation session, and ultimately worked for many additional months to negotiate the settlement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf.

In short, the settlement is the result of substantial arms'-length negotiations and compromise by both parties. The parties believe that the proposed settlement is completely fair and reasonable to the Plaintiff given the risks of litigation and should be approved.

Respectfully submitted,

*/s Peter A. Romero, Esq.*
PETER A. ROMERO

cc: All Counsel of Record via ECF